IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| ALLIANCE HEALTH GROUP, LLC | PLAINTIFF |
| VS. | CIVIL ACTION NO. 1:06CV1267LG-JMR |
| BRIDGING HEALTH OPTIONS, LLC<br>and DONALD J. BOOTH, M.D. | DEFENDANTS |

AND COUNTER-CLAIMS/ THIRD PARTY CLAIMS

| | |
|---|---|
| BRIDGING HEALTH OPTIONS, LLC<br>and DONALD J. BOOTH, M.D. | DEFENDANTS/<br>COUNTER PLAINTIFFS |
| VS. | |
| ALLIANCE HEALTH GROUP, LLC,<br>DR. DAVID FALLANG AND LYNN FALLANG<br>AND JOHN DOE DEFENDANTS | COUNTER DEFENDANTS |

**MOTION TO AMEND MEMORANDUM ORDER DENYING DEFENDANTS'
MOTION TO DISMISS FOR IMPROPER VENUE TO CERTIFY APPEALABILITY
OF ORDER FILED BY DEFENDANTS/COUNTER PLAINTIFFS
BRIDGING HEALTH OPTIONS, LLC AND DONALD J. BOOTH, M.D.**

COME NOW Defendants/Counter Plaintiffs, Bridging Health Options, LLC (hereinafter "BHO") and Donald J. Booth, M.D. (hereinafter "Dr. Booth"), by and through their attorneys, and file this their Motion to Amend Memorandum Order Denying Defendants' Motion to Dismiss for Improper Venue to Certify Appealability of Order and in support thereof would show unto the Court the following:

I.

Plaintiff, Alliance Health Group, LLC (hereinafter "Alliance") initiated this matter on December 20, 2006, by filing its Complaint. The allegations of the Complaint center upon a



EXHIBIT "A"

Development Agreement for the development of a computer program which was entered into by BHO and Alliance on August 15, 2003. Said agreement was referenced by Alliance in its Complaint and a true and correct copy of the Development Agreement is incorporated herein as Exhibit "1". The Development Agreement contained a forum selection clause which provided:

> **Governing Law: This Agreement shall be governed by and construed in accordance with the laws of the State of Mississippi and exclusive venue for any litigation related hereto shall occur in Harrison County, Mississippi.**

*See* Exhibit "1" at page 3.

## II.

Defendants filed a Motion to Dismiss for Improper Venue on March 27, 2007, asserting that the forum selection clause contained in the Development Agreement was mandatory and exclusive and pursuant to its terms, that venue was not proper herein. No arguments were heard on this motion. On June 14, 2007, this Honorable Court entered a Memorandum Order finding that the forum selection clause was permissive and denying Defendants' Motion for Improper Venue.

## III.

Pursuant to 28 U.S.C. §1292(b), in order for Defendants to be able to petition the Fifth Circuit Court of Appeals for permission to appeal this issue, this Honorable Court must certify its Order for interlocutory appeal. 28 U.S.C. §1292(b) requires that the order appealed from certify that the order: "(1) involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation." *Vrazel v. Mississippi State Port at Gulfport*, 2006 WL 3457175, *1 (S.D. Miss. 2006). A question of law has been found to be "controlling" where reversal of a district court's order would result in the termination of the litigation. *Klinghoffer v. S.N.C. Achille Lauro*

*Ed Altri-Gestione Motonave*, 921 F.2d 21, 24 (2nd Cir. 1990). The absence of definitive judicial authority on an issue of law will serve to satisfy the requirement of a substantial ground for difference. *Insurance Co. of the West v. U.S.*, 1999 WL 33604131, *3 (Fed. Cl. 1999). Where interlocutory appeal would result in a determination of whether a case would be tried in the subject court, the element of material advancement of the ultimate termination of the litigation is satisfied. *Weathersby v. General Motors Corp.*, 2007 WL 1484972, *1 (N.D. Miss. 2007). As will be shown herein and in Defendants' Memorandum Brief, each of these elements are satisfied and warrant certification of the present Order.

## IV.

Whether a forum selection clause is mandatory or permissive is dependent upon the language of the clause. "[A] mandatory forum selection clause has express language limiting the action to the courts of a specific locale which is clear, unequivocal and mandatory." *Bentley v. Mutual Benefits Corp.*, 237 F.Supp. 2d 699, 701 (S.D. Miss. 2002). "[A] permissive forum selection clause authorizes jurisdiction or venue in a selected forum but does not prohibit litigation elsewhere." *Id.* The determinative factor is whether the clause utilizes express language of limitation that provides exclusive jurisdiction or venue to a court of a specific locale. *Id.* The relevant language of the forum selection clause at issue herein is "**exclusive venue** for any litigation related hereto **shall occur** in **Harrison County, Mississippi**." *See* Exhibit "1" at page 3 (emphasis added).

The United States District Court in Kansas found that a forum selection clause with less restrictive language was exclusive and mandatory. *Double A Home Care, Inc. v. Epsilon Systems, Inc.*, 15 F. Supp. 2d 1114, 1116 (D. Kan. 1998) (forum selection clause provided that litigation shall be venued in the County of Ramsey, State of Minnesota). Like the present case, the Kansas District

Court was presented with an issue of whether both the state or federal courts of Ramsey County, Minnesota could hear the case. In determining that the federal court could not hear the case, the District Court found that [f]or federal court purposes, venue is not stated in terms of 'counties'. Rather, it is stated in terms of 'judicial districts'". *Id.* at 1117 citing 28 U.S.C. §1391. The District Court further found that "[b]ecause the language of the forum selection clause refers only to a specific county and not to a specific judicial district, we conclude venue is intended to lie only in state district court." *Id.*

This same reasoning was utilized by the Tenth Circuit Court of Appeals as the Court found that the proper forum was Colorado state court where a forum selection clause provided in pertinent part that "[j]urisdiction shall be in the State of Colorado, and venue shall lie in the County of El Paso, Colorado." *Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 318, 320-22 (10th Cir. 1997). Additionally, a Tennessee district court utilized the same reasoning in finding that a clause that provided that "venue for any matter relating to this contract shall be in Marion County, Tennessee" was a mandatory clause after hearing arguments that the clause did not differentiate between state or federal courts. *Navickas v. Aircenter, Inc.*, 2003 WL 21212747, *1 (E.D. Tenn. 2003). Further, a Court in the Fifth Circuit utilized this same sound reasoning in finding that a forum selection clause that provided in pertinent part "all claims shall be litigated only in Collin County, Texas" was mandatory and venue was not proper in federal court. *First Nat. of North America, LLC v. Peavy*, 2002 WL 449582, *1 (N.D. Tex. 2002). In so ruling, the district court found that "venue in the federal system is stated in terms of judicial districts, not counties. Thus, where a forum selection clause merely designates a particular county, venue lies only in the state courts of that county." *Id.* at *2.

This Honorable Court relied upon *Hunt Wesson Foods, Inc. v. Supreme Oil Company*, a Ninth Circuit Court of Appeals case to support its decision that the applicable clause in the present matter was permissive. The clause at issue in *Hunt* provided "[t]he courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract." *Hunt Wesson Foods, Inc. v. Supreme Oil Company*, 817 F.2d 75, 76 (9th Cir. 1987). When compared to the *Hunt* forum selection clause as well as the forum selection clauses in *Double A, Excell, Navickas*, and *First National*, the present forum selection clause provides more words of exclusivity. While the present forum selection clause and the *Hunt* clause both utilize the word "shall", they are otherwise vastly dissimilar. The *Hunt* clause does not in any way appoint a court with venue or otherwise utilize words of exclusivity. Additionally, a comparison of *Double A, Excell, Navickas*, and *First National* with the *Hunt* decision evidences the divergence in the applicable case law on the interpretation of forum selection clauses, emphasizing the substantial need for interlocutory appeal on this issue.

## V.

As presented herein, there is clearly a divergence in the case law on the issue of interpretation of a forum selection clause. Defendants assert that there is a substantial basis for a difference of opinion on the issue of whether the subject forum selection clause is mandatory or permissive based upon applicable case law. If this issue is determined in favor of Defendants, then Plaintiff's entire case would be dismissed. Accordingly, this issue presents a controlling question of law that would materially advance the termination of this litigation. For these reasons, Defendants respectfully request that this Honorable Court amend its Memorandum Order certifying its Order for interlocutory appeal.

This Honorable Court has previously considered certification of an interlocutory appeal in a different matter and in so doing, found "that immediate resolution of jurisdictional questions, the length of the Court's proceedings saved by reversal of an erroneous ruling, and the burdens imposed on the parties by an erroneous ruling justify an interlocutory appeal of this Court's order." *Vrazel*, 2006 WL 3457175 at *1. All of the foregoing considerations are present in this matter. Certification of this Court's Memorandum Order in this litigation would result in saving this Court's time as well as lessening the burdens imposed on the parties to this litigation. For all the reasons stated herein, certification of this Court's Memorandum Order is proper.

**WHEREFORE, PREMISES CONSIDERED,** Defendants/Counter-Plaintiffs BHO and Dr. Booth respectfully move this Honorable Court to Amend its Memorandum Order Denying Defendants' Motion to Dismiss for Improper Venue to Certify Appealability of Order. Defendants/Counter-Plaintiffs further pray for any other and further relief they may be entitled to within the premises.

    Respectfully submitted,

    BRIDGING HEALTH OPTIONS, LLC and
    DONALD J. BOOTH, M.D.

    BY:   PAGE, MANNINO, PERESICH
           & McDERMOTT, P.L.L.C.


    BY:   /s/ Stephen G. Peresich
           STEPHEN G. PERESICH, MSB #4114

PAGE, MANNINO, PERESICH,
& MCDERMOTT, P.L.L.C.
Post Office Drawer 289
Biloxi, Mississippi 39533
Telephone: (228) 374-2100
Facsimile: (228) 432-5539

## CERTIFICATE OF SERVICE

I, STEPHEN G. PERESICH, of the law firm of Page, Mannino, Peresich & McDermott, P.L.L.C., do hereby certify that on March 27, 2007, I electronically filed the foregoing Defendants' Motion to Amend Memorandum Order Denying Defendants' Motion to Dismiss for Improper Venue to Certify Appealability of Order Filed by Bridging Health Options, LLC and Donald J. Booth, M.D. with the Clerk of the Court using the ECF system which sent notification of such filing to the following: Ron A. Yarbrough, at the law offices of Brunini, Grantuam, Grower & Hewes, PLLC, 140 Trustmark Building, 248 East Capitol Street, Jackson, Mississippi, 39201 and by U.S. Mail to David C. Olson, at the law offices of Frost Brown Todd, LLC, 2200 PNC Center, 201 East Fifth Street, Cincinnati, Ohio, 45202-4182.

This, the 25th day of June, 2007.

/s/ Stephen G. Peresich
STEPHEN G. PERESICH MSB #4114

PAGE, MANNINO, PERESICH
& McDERMOTT, P.L.L.C.
Attorneys at Law
Post Office Drawer 289
Biloxi, MS 39533
Telephone: (228) 374-2100
Facsimile: (228) 432-5539

## Bridging Health Options, LLC (BHO) - Development Agreement

This agreement is made and entered into by the undersigned, on this _15_ day of _August_ 20_03_

| | | |
|---|---|---|
| Company: | ~~Buckeye Medical Leasing~~ Alliance Health Group, LLC | Bridging Health Options, LLC |
| Address: | P.O. Box 750331 | P.O. Box 3777 |
| | Dayton, OH 45400 | Gulfport, MS 39505-3777 |
| Contact: | Lynne Pallang | Dr. Donald Booth |
| Phone: | 800 424-3533 | 800-615-2915 |

### Article 1 – Service/Development Terms

1.1 The parties wish to engage in a business relationship in accordance with the services and development tasks as follows: Develop the desired computer program of up to and including a "soft Launch" date of approximately 90 days.

| Item Description | Estimated Charge | Estimated Soft Launch Date | Approval (Initial) |
|---|---|---|---|
| **Riverview Health Institute Database Project Stage 1**<br>• Define electronic remittance schema<br>• Create patient data input screens for office and center<br>• Create database framework to accommodate admittance, surgery, recovery and discharge<br>• Create schema for:<br>  ○ Patient data<br>  ○ Provider data<br>  ○ Appointment data<br>  ○ Specialty data<br>  ○ Physician data<br>  ○ Codetype data<br>  ○ Codeset data<br>  ○ Caregiver data<br>  ○ Insurance data<br>  ○ Drug allergy data<br>  ○ Appointment data<br>  ○ Referral data<br>  ○ Condition data<br>  ○ Surgical history data<br>  ○ Recall data<br>  ○ Receiver data<br>  ○ Billing provider data<br>  ○ Admissions data<br>  ○ Location data<br>  ○ Service data | $138,000 - $138,000 (actual amount based on hourly rate of $150.00 per hour) **($69,000 deposit due upon acceptance)** | 90 days | |
| Database Architecture, Database Programming, UI Framework Programming, Database Design | $150/hr | | |
| Day Rate for Travel | $1,000/person plus all out of pocket expenses | | |

Page 1 of 3

8-15-03
Received
LF

**EXHIBIT "1"**

| Solution Hosting Database on W2K Server Includes up to 25 e-mail accounts, basic search engine submission and reporting. | $110/month | | |
|---|---|---|---|
| Monthly Deposit will be issued upon 110 hours per week (440 hours /month) at the hourly programming rate of $150/hr. Deposit will be due at the beginning of each 30 day interval. Actual charges will be adjusted and billed/credited at the end of each 30 day period. All invoices shall be paid no later than 7 days from receipt of invoice by Buckeye Medical Leasing (Riverview). | | | |
| Client (Buckeye Medical Leasing/Riverview) is expected to participate every other day (Monday, Wednesday & Friday) in a teleconference to review progress. Client's failure to do so may affect timeline of the project. Failure to respond promptly to phone calls and e-mails may also adversely affect the time line. | | | |

1.1 COST ESTIMATES: The Cost Estimates provided above are for informational purposes only. The exact cost of the tasks outlined above are not certain and the parties hereto agree and understand that the exact cost of completing such tasks cannot be ascertained prior to the completion of said tasks. If at any time during the execution of these tasks it is determined that the Cost Estimates are outside of 10% of the true costs of any of the separately estimated tasks the purchasing party may request to be notified and give approval for any additional costs prior to the continuation of the task.

1.3 PAYMENT: An initial payment of approximately 30% of the total of the Cost Estimates provided for herein ($64,000.00) shall be paid upon execution of this Agreement and prior to the commencement of the performance of the services and/or development tasks. Similar payments of $66,000.00 will be due 30 days and 60 days from execution of this documentation. The purchasing party will receive a final invoice for completed services and /or development tasks. Payment for the remainder of the monies owed to BHO (which is calculated as the amount of the final invoice minus the interval payments) shall be due within ten (10) days of receipt of the final invoice. BHO reserves the right at its sole discretion to retain the results of the completed services/tasks and not release same to the purchasing party until final payment of monies owed is received by BHO.

### Article 2 – Liability/Indemnification

2.1 In the event a claim concerning the subject services and/or development tasks is brought against BHO for infringement of patent or copyright law, the purchasing party shall indemnify and hold harmless and defend BHO against all loss, liability, damage and expense, including without limitation, legal fees, arising from claims that the use of the materials provided, used, or obtained at the direction of the purchasing party or part thereof infringes on any patent, copyright, trademark, or other property right; provided that BHO gives the purchasing party prompt written notice of its knowledge of such suit or claim and permits the purchasing party to control the defense thereof. The provisions of this paragraph shall survive the termination of this Agreement.

2.2 No Consequential Damages: NEITHER PARTY WILL BE LIABLE TO THE OTHER PARTY FOR ANY CONSEQUENTIAL, INDIRECT, PUNITIVE, SPECIAL OR INCIDENTAL DAMAGES, WHETHER FORESEEABLE OR UNFORESEEABLE, BASED ON CLAIMS OF THE OTHER PARTY OR ITS CUSTOMERS (INCLUDING, BUT NOT LIMITED TO, CLAIMS FOR LOSS OF DATA, GOODWILL, PROFITS, INVESTMENTS, USE OF MONEY OR USE OF BHO PRODUCTS, INTERRUPTION IN USE OR AVAILABILITY OF DATA, STOPPAGE OR OTHER WORK OR IMPAIRMENT OF OTHER ASSETS; OR LABOR CLAIMS), ARISING OUT OF BREACH OF EXPRESS OR IMPLIED WARRANTY, BREACH OF CONTRACT, MISREPRESENTATION, NEGLIGENCE, STRICT LIABILITY IN TORT OR OTHERWISE, EXCEPT ONLY IN THE CASE OF DEATH OR PERSONAL INJURY WHERE AND TO THE EXTENT THAT APPLICABLE LAW REQUIRES SUCH LIABILITY. WITH THE EXCEPTION OF INDEMNITY OBLIGATIONS SET FORTH IN THIS AGREEMENT (WHICH ARE EXPRESSLY EXCLUDED FROM THE LIMITATIONS SET OUT IN THIS CLAUSE), THE AGGREGATE LIABILITY OF EITHER PARTY ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT SHALL NOT EXCEED THE AMOUNTS CONTEMPLATED BY AND PAID UNDER THIS AGREEMENT

2.3 BHO's Warranty: BHO shall utilize skilled contractors capable of designing and implementing the Software and all work performed by them shall be in a professional and workmanlike manner of the highest quality. BHO further warrants that: (1) the Software will operate and perform in a similar manner described in the software specification and without any physical defects or bugs when the final version is released and installed; and (2) the Software shall contain no back door, time bomb, drop dead device, virus, Trojan horse, worm, or other software routine designed to (a) disable any computer program automatically with the passage of time or occurrence of any event or under the control of a person other than the Purchasing Party; (b) permit unauthorized access by third parties due to embedded or extraneous code; or (c) disable, erase or otherwise harm the Software or the Purchasing Party's data or hardware. Upon completion of this project and payment of all monies due BHO, purchaser will become sole owner of this software.

2.4 Purchasing Party's Warranty: The Purchasing Party warrants that it will act in the utmost good faith with regard to the day-to-day operation, deployment, and use of the Software and use the same only exactly as directed. If purchaser wishes to market this software, purchasing party warrants that it will engage Bridging Health Options as sole marketing and sales agent under a contract agreed to at that time. And that if such an agreement is executed, the Purchasing Party and BHO each warrant that they will each timely inform the other of all transactions in the Software and that they will maintain accurate and timely books and records of all transactions involving the Software and will make same available in each other for inspection upon reasonable notice for the sole purpose of verifying the revenues derived from such transactions in calculation of the monies owed to BHO under this Agreement. The Purchasing Party further warrants that it will not transfer the Software other than for monies under the agreement in place at the time.

### Article 3 – Termination

Page 2 of 3

3.1 Both parties hereto shall have the right to terminate this Agreement in the event of a material breach hereunder by the other party only if, after written notice is provided of the material breach and the material breach is not remedied within ten (10) business days of notice thereof. In the event that such material breach cannot be remedied within the specified time limitation due to circumstances beyond the control of the breaching party, the period to cure such a material breach will be extended to forty-five (45) days from notice of such material breach. The period to cure the material breach may be further extended by written agreement of the parties.

3.2 The parties shall have the right to terminate this Agreement in the event that either ceases to conduct business and liquidates, makes a general assignment for the benefit of its creditors, or commences proceedings for voluntary or involuntary bankruptcy.

### Article 4 – Assignment

4.1 The parties hereto may assign this Agreement to their subsidiary, affiliate or parent with the approval of the other party to this Agreement. Such approval shall not be unreasonably withheld.

### Article 5 – General Provisions

5.1 Confidentiality: The parties hereto acknowledge that in the course of performing their responsibilities under this Agreement, they each may be exposed to or may acquire information that is proprietary to or confidential to the other party. The parties agree to hold such information in strict confidence and not to copy, reproduce, sell, assign, license, market, transfer, give or otherwise disclose such information to third parties or to use such information for any purposes whatsoever, without the express written permission of the other party, other than for the performance of obligations hereunder, and to advise each of their employees, agents, and representatives of their obligations to keep such information confidential. All such confidential and proprietary information disclosed herein and any deliverable data, features, business plans, and computer software (in various stages of development), designs, drawings, specifications, models, source codes, object codes, documentation, diagrams, flow charts, and similar information are hereinafter collectively referred to as "Confidential Information." The parties shall use reasonable efforts to advise each other immediately in the event that either learns or has reason to believe that any person who has had access to Confidential Information has violated or intends to violate the terms of this Agreement, and will reasonably cooperate in seeking injunctive relief against any such person.

5.2 Governing Law: This Agreement shall be governed by and construed in accordance with the laws of the State of Mississippi and exclusive venue for any litigation related hereto shall occur in Harrison County, Mississippi.

5.3 Legal and Other Costs: In the event of a dispute with respect to the terms and obligations required to be performed hereunder, the prevailing party shall be entitled to reasonable attorney fees and costs from the other party, which in the event of litigation shall include those attorney's fees and costs of settlement, trial and appeal. The parties acknowledge that the subject matter of this Agreement is unique and that money damages may be inadequate and that the non-breaching party shall be entitled to the equitable remedy of specific performance of the obligations contemplated herein and/or injunctive relief.

5.4 Entire Agreement: This Agreement contains the entire agreement between the parties. This Agreement may be modified and supplemented only by a written document signed by an authorized representative of each party.

5.5 Force Majeure: Neither party will be liable for any failure or delay in performing an obligation under this Agreement that is due to causes beyond its reasonable control, such as natural catastrophes, governmental acts or omissions, laws or regulations, labor strikes or difficulties or transportation stoppages or slowdowns. If any of these causes continues to prevent or delay performance for more than ninety (90) days, the affected party may terminate this Agreement, in whole or in part, effective immediately upon notice in writing to the other party.

5.6 Waiver: The right of either party to terminate this Agreement for any of the reasons set forth herein shall not be affected in any way by its waiver or claimed waiver of their failure to take action with respect to any such previous default.

5.7 Invalidity: If any provision of this Agreement is declared to be invalid, such provision shall be severed from this Agreement and the other provisions hereof shall remain in full force and effect.

5.8 Notice: Any and all notices provided for herein shall be given in writing, by registered or certified mail, return receipt requested, to the addresses set forth in this Agreement or the last known address of the party, or by facsimile.

Bridging Health Options, LLC                Client: Buckeye Medical Leasing, Inc.  Alliance Health Group, LLC

Signature/Date: _____ 8/4/03      Signature/Date: _____
               Donald J. Bogdan, MD, President                    Dr. Falking

Signature/Date: _____ 8/4/03      Title: _____
               D. Anne McKeough, RN, MSN, CEO

                                            Signature/Date: _____
                                                           Lynne Falking

                                            Title: President

                                            Judith A. Cramer  5/19/03
                                            Manager

Page 3 of 3