**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**ALLIANCE HEALTH GROUP, LLC**                                                          **PLAINTIFF**

**VS.**                                                  **CIVIL ACTION NO. 1:06CV1267LG-JMR**

**BRIDGING HEALTH OPTIONS, LLC**
**and DONALD J. BOOTH, M.D.**                                                  **DEFENDANTS**


**AND COUNTER-CLAIMS/ THIRD PARTY CLAIMS**


**BRIDGING HEALTH OPTIONS, LLC**
**and DONALD J. BOOTH, M.D.**                                                      **DEFENDANTS/**
                                                                        **COUNTER PLAINTIFFS**

**VS.**

**ALLIANCE HEALTH GROUP, LLC,**
**DR. DAVID FALLANG AND LYNN FALLANG**
**AND JOHN DOE DEFENDANTS**                                          **COUNTER DEFENDANTS**


**MOTION TO STAY DISCOVERY AND FURTHER PROCEEDINGS FILED BY**
**DEFENDANTS/COUNTER PLAINTIFFS**
**BRIDGING HEALTH OPTIONS, LLC AND DONALD J. BOOTH, M.D.**

COME NOW Defendants/Counter Plaintiffs, Bridging Health Options, LLC (hereinafter "BHO") and Donald J. Booth, M.D. (hereinafter "Dr. Booth"), by and through their attorneys, and file this their Motion to Stay Discovery and Further Proceedings and in support thereof would show unto the Court the following:

**I.**

Plaintiff, Alliance Health Group, LLC (hereinafter "Alliance") filed this lawsuit against Bridging Health Options, LLC (hereinafter "BHO") and Donald J. Booth, M.D. (hereinafter "Dr. Booth") alleging numerous wrongs related to a breach of a Development Agreement for the preparation of a software program which was entered into by BHO and Alliance on August 15, 2003.

Specifically, Alliance alleges six (6) Counts in its Complaint, as follows: Count One–asserted only against BHO for breach of contract, seeking specific performance; Count Two–asserted only against BHO for false pretenses, or fraudulent inducement; Count Three–asserted only against BHO, asserting breach of contract, seeking recision; Count Four–asserted against Dr. Booth and BHO, negligent misrepresentation; Count Five–asserted against Dr. Booth and BHO, asserting intentional and fraudulent misrepresentation; and Count Six–asserted against Dr. Booth and BHO asserting breach of the duty of good faith and fair dealing.

## II.

Defendant Dr. Booth has presently pending before this Court a dispositive motion to dismiss for failure to state a claim (or, alternatively, for judgment on the pleadings) as to the Counts for which he is a named defendant–namely, Counts Four, Five, and Six–based on the fact that was acting in his official capacity as President of BHO.

In addition, both Dr. Booth and BHO have pending a separate motion to dismiss (or, alternatively, for judgment on the pleadings), based upon the expiration of the three (3) year statutes of limitations for the six (6) causes of actions pursued by Alliance.

The substance of both of these dispositve motions was discussed at the scheduling conference of March 2, 2009, and specifically authorized to proceed by this Court in its Case Management Order of the same date.

## III.

If Dr. Booth's Motion to Dismiss prevails, which is a strong likelihood given he was acting only in his capacity as President of BHO, he would have no personal liability, and would be entitled to a dismissal with prejudice. This would provide relief from the burden of this litigation and the enormous litigation costs and expenses. It is well established that "an agent for a disclosed principal

incurs no liability for a breach of duty or a contract perpetrated by its disclosed principal." *See Gray v. U.S. Fidelity and Guar.*, 646 F.Supp. 27, 29 (S.D.Miss. 1986), *citing Progressive Casualty Ins. Co. v. Keys,* 317 So.2d 396 (Miss. 1975); *Wood v. Mississippi Power Co.,* 146 So.2d 546, 551 (Miss. 1962); *Shemper v. Hancock Bank,* 40 So.2d 742, 744 (Miss. 1949); *Ketcham v. Mississippi Outdoor Display,* 33 So.2d 300, 301 (Miss. 1948); *see also,* Miss. Code Ann. § 83-21-27 (1972). As the Court in *Gray* held, "[b]ound by Erie, the district courts have accordingly held that an agent of a disclosed principal, acting within the authority of his agency, will not be personally liable where a third party brings an action for a breach of contract against the principal." *Id, citing Cone Mills Corp. v. Hurdle,* 369 F.Supp. 426 (N.D.Miss.1974); *Webbs v. Culberson, Heller & Norton, Inc.,* 357 F.Supp. 923 (N.D.Miss.1973); *Chipman v. Lollar,* 304 F.Supp. 440 (N.D.Miss.1969).

Dr. Booth is a retired physician and has no liability insurance providing his defense, and he should be afforded the opportunity for relief from the burden of this litigation and the enormous litigation costs and expenses. Dr. Booth's Motion to Dismiss himself in his individual capacity was filed on April 28, 2009 and has been fully briefed and is awaiting disposition.

Should the Motion to Dismiss on Statute of Limitations be granted to BHO and Dr. Booth, it would result in the complete dismissal of all claims made by Alliance. As set forth above, Alliance has asserted claims for breach of contract (seeking both rescission and specific performance), false pretenses or fraudulent inducement, negligent misrepresentation, intentional or fraudulent misrepresentation, and breach of the implied duty of good faith and fair dealing, in its six (6) count Complaint. Under Mississippi law, the three year statute of limitations embodied in Miss. Code § 15-1-49 applies to each of these claims. *See* Miss. Code § 15-1-49; *Sanderson Farms, Inc. v. Ballard,* 917 So. 2d 783 (Miss. 2005) (claims of false pretenses, negligent misrepresentation, and intentional/fraudulent misrepresentation have a three-year statute of limitations); *Bullock v. AIU Ins.*

*Co.*, 995 So.2d 717 (Miss. 2008) and *Trammell v. State*, 622 So.2d 1257, 1261 (Miss.1993) (tort actions arising from contractual obligations, including a claim for bad faith/unfair dealing, have a three-year statute of limitations); and *Bailey v. Estate of Kemp*, 955 So.2d 777 (Miss. 2007) (breach of contract claims seeking rescission and specific performance have a three-year statute of limitations).

Each of the facts identified in Plaintiff's Complaint occurred more than three years prior to the filing of the lawsuit.  If this Motion to Dismiss prevails, which is a strong likelihood given that all of the alleged acts cited by Alliance that give rise to its claims occurred more than three years prior to suit being filed, Dr. Booth and BHO would be entitled to a dismissal with prejudice, and relief from the burden of this litigation and the enormous litigation costs and expenses.

## IV.

Moreover, Dr. Booth and BHO have asserted counterclaims against Alliance and third-party claims against Dr. David and Lynn Fallang, two of the principals in Alliance.  *See* Doc. 8.  In their Counterclaim and Third-Party Complaint, Dr. Booth and BHO include seventeen Counts, asserting claims for breach of contract, indemnification, declaratory judgment as to ownership of the software at issue, breach of warranty, breach of the duty of good faith and fair dealing, negligent and/or intentional infliction of emotional distress, intentional and/or negligent misrepresentation, legal and other costs, injunctive relief, an accounting, libel and slander per se, tortious interference with contract, tortious interference with prospective advantage and business relations, and civil aiding and abetting and  conspiracy, vicarious liability, and damages.

In response to Dr. Booth and BHO's Third-Party Complaint, on July 26, 2007, the third-party defendants, Dr. and Mrs. Fallang, moved to dismiss the third-party claims against them for lack of

personal jurisdiction.  The Fallang's Motion remains pending before the Court.

Dr. Booth and BHO are poised to commence discovery against the Fallangs regarding the substantive issues presented in Dr. Booth and BHO's Third-Party Complaint.  However, to engage in extended, complex discovery on these issues when the prospect of the Court ruling in favor of the Fallangs on these threshold jurisdictional issues and dismissing them from the case at some later date would constitute an extreme prejudice and hardship on Dr. Booth and BHO.

**V.**

To require merit discovery to proceed and require multiple parties to go through the time and expense of conducting extensive discovery in this matter upon the issues of the case, when these steps would be unnecessary if the moving parties were to prevail on these dispositive motions would waste considerable time, resources, and expense and be overly burdensome to all parties.

This is particularly the case given the anticipated scope of discovery in this case.  As an initial matter, in light of the various broad claims asserted by the parties in this case, the standard paper discovery alone, including requests for production and interrogatories, involves potentially thousands of pages of documents and computer programming code.  With regard to fact depositions, before experts are taken into consideration, it is likely that, given the locations of the parties and key witnesses, that depositions would be spread across at least three states, from Ohio, to Mississippi, to Florida.

With regard to experts, given the complicated computer programming issues involved, including software development plans and processes, the parties will be required to engage computer software development experts to review the Development Agreement, the processes, procedures, and methodologies utilized in developing the software, and opining as to the ultimate performance

of the software developed and provided to Alliance.

Similarly, the damages claims in this case appear likely to involve complex analysis of corporate statements and lost profits evaluations, which will also require forensic accounting expert analysis and testimony.

In addition, there may be additional areas requiring expert testimony which cannot be fully determined until discovery is more substantially completed.[1]

In addition, many of Alliance's claims–and, as a result, much of BHO and Dr. Booth's anticipated defenses–would appear to center around actions, postures, and strategies taken by BHO in response to two different litigation matters that took place in Florida, including a state court claim brought against BHO and Alliance, among others, as well as a bankruptcy proceeding in the Bankruptcy Court for the Southern District of Florida–both brought by The NCCR Group, Inc. and its principal officer, Kevin Thomas.  (The NCCR Group was the software development company engaged by BHO to perform the software development for the Development Agreement).  Discovery related to this litigation would involve depositions of witnesses, and would likely bring into play delicate evidentiary and discovery issues including attorney client privilege and work product doctrine issues.

All of the foregoing would be undertaken at a considerable cost and expenditure of time and other resources, for all parties involved and, additionally, in a considerable amount of time and resources of this Court–all of which could be avoided by staying these proceedings, including further

---

[1]In addition to the inherent demands involved with engaging expert witnesses on the obvious issues for which expert testimony will be required, as the current Case Management Order stands, the parties are also compelled to move forward with engaging experts before discovery has been significantly advanced.  According to the Case Management Order, the Plaintiffs are required to disclose experts by September 15, 2009, and the Defendants are required to disclose experts by November 1, 2009.

discovery, pending a ruling on the outstanding dispositive motions before the Court.

## VI.

To fully appreciate the complexity of this case, and the monumental scope of discovery that would be necessary to fully explore the factual background of this case–discovery that could be avoided in whole or in part by an initial consideration of the pending Motions to Dismiss–Dr. Booth and BHO offer the following summary of the proceedings of this case and the involved and complex discovery that is currently underway:

A.  As previously indicated, Alliance alleges six (6) Counts in its Complaint, as follows: Count One – asserted only against BHO for breach of contract, seeking specific performance; Count Two – asserted only against BHO for false pretenses, or fraudulent inducement; Count Three – asserted only against BHO, asserting breach of contract, seeking rescission; Count Four – asserted against Dr. Booth and BHO, negligent misrepresentation;  Count Five – asserted against Dr. Booth and BHO, asserting intentional and fraudulent misrepresentation; and Count Six – asserted against Dr. Booth and BHO asserting breach of the duty of good faith and fair dealing. *See* Plaintiff's Complaint, attached hereto as **Exhibit A**.

B.  Also as previously referenced, on February 19, 2007, Dr. Booth and BHO answered Alliance's Complaint and asserted counterclaims against Alliance and third-party claims against two of the principals of Alliance, Dr. David and Lynn Fallang, as well as John Doe Defendants.  Dr. Booth and BHO's Counterclaim and Third-Party Complaint included seventeen (17) Counts, as follows:  breach of contract, indemnification, declaratory judgment as to ownership of the software at issue, breach of warranty, breach of the duty of good faith and fair dealing, negligent intentional infliction of emotional distress, intentional

-7-

infliction of emotional distress, intentional and/or negligent misrepresentation, legal and other costs, injunctive relief, an accounting, libel and slander per se, tortious interference with contract, tortious interference with prospective advantage and business relations, civil aiding and abetting and conspiracy, vicarious liability, and damages.  Dr. Booth and BHO's Amended Answer, Counterclaim, and Third-Party Complaint (Doc. 8) is attached hereto as **Exhibit B**.

C.     On March 27, 2007, Dr. Booth filed a Motion to Dismiss for improper venue (Doc. 13); BHO filed a similar motion on March 30, 2007 (Doc. 14);

D.     On June 6, 2007, Dr. Booth and BHO moved the Court to stay the proceedings, in light of the pending motions (Doc. 27);

E.     On June 8, 2007, the Court denied Dr. Booth and BHO's Motion to Stay in a text only docket entry, and on June 14, 2007, the Court denied Dr. Booth and BHO's Motion to Dismiss for improper venue (Doc. 28).  Following the Court's June 14 Order, Dr. Booth and BHO moved the Court to amend its Order denying the Motion to Dismiss on June 25, 2007 to certify the Order for appeal (Doc. 31);

F.     While the Motion to Alter or Amend was pending, Alliance served prediscovery disclosures (Doc. 34) and Dr. Booth and BHO moved to stay formal discovery on July 25, 2007 (Doc. 38);

G.     The following day, on July 26, 2007, the third-party defendants, Dr. and Mrs. Fallang, moved to dismiss the third-party claims against them for lack of personal jurisdiction (Doc. 39);

H.     On July 30, 2007, BHO served its initial disclosures, including the production of emails,

contracts, and other documents related to the underlying claims (Doc. 42);

I.   On August 24, 2007, this case was transferred to the Honorable Judge Ozerden, and a scheduling order was entered on August 30, 2007 (Docs. 48 and 49);

J.   Also on August 30, 2007, the Honorable Judge Roper denied Dr. Booth and BHO's Motion to Stay and, on September 25, 2007, Dr. Booth and BHO moved the Court for leave to pursue jurisdictional discovery (Doc. 51);

K.    On November 8, 2007, the Court granted Dr. Booth and BHO's Motion to Amend and certified the June 14, 2007 Order denying Dr. Booth and BHO's Motion to Dismiss for improper venue (Doc. 55);

L.   On November 21, 2007, Dr. Booth and BHO moved the Court for permission to appeal from the June 14, 2007 interlocutory order (Doc. 57), which Motion was granted on January 11, 2008 (Doc. 59);

M.   On January 9, 2009, the Fifth Circuit Court of Appeals affirmed this Court's denial of Dr. Booth and BHO's Motion to Dismiss for improper venue (Doc. 63);

N.   On March 3, 2009, this Court conducted a status conference at which time an Order was entered that, among other things, set various scheduling deadlines and authorized Dr. Booth and BHO to file preliminary and dispositive motions to dismiss on the issues of statutes of limitations and also, with regard to Dr. Booth, a motion to dismiss on the issue of his acting at all times solely in a corporate capacity as President for BHO (Doc. 65);

O.   On April 28, 2009, Dr. Booth filed a Motion to Dismiss the individual claims against him on the basis of his acting in an official corporate capacity as President of BHO (Doc. 66); this motion has been briefed by the parties and is currently pending before the Court;

P.   On June 15, 2009, while Dr. Booth's Motion to Dismiss was pending, Alliance propounded

a Second Set of Discovery Requests to BHO, and, in addition, requested deposition dates for corporate representatives of BHO along with thirty-eight (38) draft 30(b)(6) areas of inquiry (a copy of Alliance's Second Set of Discovery, with cover letter from counsel and draft 30(b)(6) areas of inquiry, are attached hereto as **Exhibit C**);

Q.      The discovery propounded by Alliance was incredibly involved and complex, and included sixteen interrogatories (not including subparts) and forty-five requests for production, covering practically every detail of the relationships of the parties, the corporate structure and history of the parties, the history of the software development process, and communications between and among all parties involved, including third-party software developers, as well as litigation matters conducted in Florida state and bankruptcy courts.

R.      Moreover, the thirty-eight (38) detailed 30(b)(6) categories listed by Alliance demonstrate the breadth, scope, and voluminous detail of the discovery propounded by Alliance:

1.      All actions taken by BHO to negotiate the terms and conditions of the Development Agreement dated August 15, 2003 between BHO and Alliance Health Group LLC ("Alliance") and attached hereto as Exhibit A ("BHO/Alliance Agreement").

2.      All actions taken by BHO directly or through its representatives to perform the tasks listed in Article 1 to the BHO/Alliance Agreement.

3.      All payments received by BHO under the terms of the BHO/Alliance Agreement.

4.      All actions taken by BHO to satisfy its obligations under the terms of the BHO/Alliance Agreement to perform the following tasks:

•       creation of schema for patient data, provider data, appointment data, specialty data, physician data, code type data, code set data, caretaker data, insurance data, drug allergy data, appointment data, referral data, condition data, surgical history data, recall data, receiver data, billing provider data, admissions data, location data, and service data.

-10-

5.      All actions taken by BHO under the terms of the BHO/Alliance Agreement to define electronic remittance schema.

6.      All actions taken by BHO under the terms of the BHO/Alliance Agreement to create patient data input screens.

7.      All actions taken by BHO under the terms of the BHO/Alliance Agreement to create database frame work to accommodate remittance, surgery, recovery and discharge.

8.      How rates were set for estimated charges, hourly rates and monthly rates as set forth in the BHO/Alliance Agreement.

9.      The identity of all skilled contractors engaged or employed by BHO capable of designing and implementing the work under the BHO/Alliance Agreement.

10.     All actions taken by BHO to determine that all work performed under the terms of the BHO/Alliance Agreement was performed in a professional and workmanlike manner and of the highest quality.

11.     All actions taken by BHO to satisfy the warranty set forth in the BHO/Alliance Agreement that "the software will operate and perform similar manner described in the software specifications and without any physical defects or bugs when the final version is revealed and installed."

12.     All actions taken by BHO to assure that Alliance would become the "sole owner of the software" developed under the terms of the BHO/Alliance Agreement.

13.     Any evidence that BHO has that Alliance was at any time in a material breach of its obligations under the terms of the BHO/Alliance Agreement.

14.     All actions taken by BHO to negotiate and execute the Development Agreement with NCCR Group, Inc. dated August 15, 2003 ("the Development Agreement"), attached hereto as Exhibit B.

15.     The relationship between the performance by NCCR Group, Inc. under the Development Agreement attached as Exhibit B and the obligations of BHO to perform under the terms of the BHO/Alliance Agreement attached as Exhibit A.

16.     How rates were set for estimated charges, hourly rates and monthly rates as set forth in the Development Agreement.

-11-

17.     All payments made to NCCR Group under the terms of the Development Agreement.

18.     All actions taken by BHO to determine whether NCCR Group complied with its warranties set forth in the Development Agreement.

19.     All actions taken by BHO to satisfy its obligation under the Development Agreement to inform NCCR "of all transactions in the Software."

20.     All actions taken by BHO to satisfy its warranty under the Development Agreement that it would "maintain accurate and timely books and records of all transactions involving the Software."

21.     All actions taken by BHO to fulfill its warranty set forth in the Development Agreement "that it will not transfer the Software other than for monies in an amount equal to or greater than fair market value or in a manner that could be construed as an attempt to circumvent NCCR's revenue sharing hereunder."

22.     The negotiating and operation of the revenue sharing obligations of BHO and rights of NCCR Group set forth in the Development Agreement.

23.     Any evidence that NCCR Group was in material breach of its obligations under the Development Agreement.

24.     The decision made by BHO to terminate the Development Agreement and the basis for such decision.

25.     The decision to have Florida law govern the Development Agreement and to have Mississippi law govern the BHO/Alliance Agreement.

26.     The allegations and positions taken by each party in the litigation filed in Palm Beach County, Florida, Case No. 50 2004 CA 002952, in which NCCR Group alleged that BHO had improperly terminated the Development Agreement.

27.     BHO's Factual response to the claim by NCCR Group that NCCR Group was the author and creator of the software which was the subject of the BHO/Alliance Agreement.

28.     BHO's factual response to the claims of NCCR Group that BHO, Dr. Booth and others conspired to steal intellectual property owned by NCCR Group.

29.     BHO's factual response to NCCR Group's claim that NCCR Group developed the software described in the BHO/Alliance Agreement as a work for hire such that Alliance would have no ownership interest in the software.

30.     Any evidence that BHO currently owns or at any time ever owned the software, source code or other intellectual property necessary to perform any of the work set forth in the BHO/Alliance Agreement.

31.     The items discussed at any meeting, whether held in Ohio or elsewhere, between representatives of BHO and Dr. David Fallang and/or Lynn Fallang ("the Fallangs") to discuss the development and purchase/sale of any software by BHO to assist in the management of data generated at a medical facility owned or operated by a business entity in which the Fallangs had an ownership interest.

32.     Any discussions or negotiations between BHO, representatives of BHO, and the Fallangs whereby the Fallangs or a business entity in which the Fallangs had an ownership interest would purchase a computer program known BariBase around which a computer program would be constructed for use by the Fallangs or a business entity in which the Fallangs had ownership interest to assist in the management and operation of such medical facility.

33.     Any meeting attended by BHO and/or its representatives in Dayton, Ohio at which times BHO through its representatives obtained information concerning the operation of the medical facility in Dayton, Ohio and discussed the use of a computer program to be developed by BHO at the medical facility.

34.     The facts and circumstances surrounding the execution of a Development Agreement by BHO.

35.     All actions taken by BHO to satisfy the estimated soft launch date as set forth in the BHO/Alliance Agreement.

36.     The identity of any other person or entity to which BHO, sold transferred or otherwise disposed of software similar to that which was to be developed under the BHO/Alliance Agreement.

37.     Any litigation to which BHO has been a party concerning the software, or similar software, that is described in the BHO/Alliance Agreement.

38.     The amount and means and methods to calculate all damages, if any, incurred by BHO for which recovery is sought against Alliance or the Fallangs in this action.

**VII.**

On August 13, 2009, in a good faith effort to comply with their discovery obligations, BHO

and Dr. Booth responded to Alliance's discovery requests and, in an effort to protect their own

-13-

interests in this case, propounded initial discovery requests of their own to Alliance.  Dr. Booth and BHO's discovery requests to Alliance are naturally as broad and involved as were Alliance's discovery requests to them.

Despite BHO and Dr. Booth's good faith efforts to respond to Alliance's discovery, Alliance is not satisfied with those responses and has demanded that BHO and Dr. Booth supplement their responses and provide deposition dates.  (The letter from counsel for Alliance to counsel for Dr. Booth and BHO is attached hereto as **Exhibit D**).

Recognizing the extent of the discovery issues and costs and expenses that will necessarily be required in responding to Alliance's discovery concerns, and engaging in extensive depositions of the parties–all efforts and expenses that may be unnecessary, depending on the rulings of this Court–BHO and Dr. Booth have brought this Motion to Stay.

## VIII.

In addition to the considerable savings of resources and time that a stay would provide, BHO and Dr. Booth assert that no prejudice would result to any party from staying merit discovery in this matter.  While the parties have propounded initial written discovery in this matter, that discovery is not necessary to a determination of the dispositive motions before the Court.

## IX.

The U.S. District Court for the Southern District of Mississippi has considered and granted a motion to stay all discovery proceedings where the Court had pending before it motions to dismiss filed by defendants on the basis of qualified immunity. *See Bynum v. City of Magee, Mississippi*, 2007 WL 913404 (S.D. Miss. 2007).  In *Bynum*, District Judge Lee granted the defendants' motion to stay discovery until a ruling was made on the defendants' motions to dismiss as no discovery was

-14-

necessary to assist in a determination of the defendants' motions on qualified immunity.  Similarly, the present Defendants' Motions to Dismiss have not and do not require discovery to assist the Court in a determination of the issues raised in these Motions to Dismiss.  Accordingly, a stay in the present matter is appropriate.

## X.

For the reasons stated herein, and because a ruling in favor of Defendants on their Motions to Dismiss would result in the complete dismissal of this matter or, in the alternative, a ruling in favor of Dr. Booth on his Motion to Dismiss would result in his personal dismissal from the case, the Defendants respectfully request a stay of the present proceedings until a determination is made upon Defendants' pending Motions to Dismiss.

**WHEREFORE, PREMISES CONSIDERED,** Defendants/Counter-Plaintiffs, BHO and Dr. Booth, respectfully move this Honorable Court to grant a Stay of Proceedings herein until such time as Defendants' Motion to Dismiss based on the statutes of limitation and Dr. Booth's Motion to Dismiss based on capacity are finally adjudicated.  Defendants/Counter-Plaintiffs further pray for any other and further relief they may be entitled to within the premises.

Respectfully submitted,

BRIDGING HEALTH OPTIONS, LLC and
DONALD J. BOOTH, M.D.

BY:   PAGE, MANNINO, PERESICH
       & McDERMOTT, P.L.L.C.

BY:   /s/ Stephen G. Peresich
       STEPHEN G. PERESICH, MSB #4114

PAGE, MANNINO, PERESICH,
& MCDERMOTT, P.L.L.C.
Post Office Drawer 289
Biloxi, Mississippi 39533
Telephone: (228) 374-2100
Facsimile:  (228) 432-5539

## **CERTIFICATE OF SERVICE**

I, STEPHEN G. PERESICH, of the law firm of Page, Mannino, Peresich & McDermott, P.L.L.C., do hereby certify that on August 26, 2009, I electronically filed the foregoing Motion to Stay Discovery and Further Proceedings Filed by Bridging Health Options, LLC and Donald J. Booth, M.D. with the Clerk of the Court using the ECF system which which sent notification of such filing to the following: Ron A. Yarbrough, at the law offices of Brunini, Grantham, Grower & Hewes, PLLC, 140 Trustmark Building, 248 East Capitol Street, Jackson, Mississippi, 39201, ryarbrough@brunini.com, and to David C. Olson, at the law offices of Frost Brown Todd, LLC, 2200 PNC Center, 201 East Fifth Street, Cincinnati, Ohio, 45202-4182, dolson@fbtlaw.com.

This, the 26th day of August, 2009

/s/ Stephen G. Peresich_____
STEPHEN G. PERESICH, MSB #4114


PAGE, MANNINO, PERESICH
& McDERMOTT, P.L.L.C.
Attorneys at Law
Post Office Drawer 289
Biloxi, MS 39533
Telephone: (228) 374-2100
Facsimile:  (228) 432-5539

-17-